UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 1:14-cr-00049-jgm-01 |
| ROBERTO PABON, | : | |
| Defendant. | : | |

ORDER ON MOTION TO SUPPRESS
(Doc. 19)

I.   Introduction

Defendant Roberto Pabon is charged with possession of heroin with the intent to distribute. 21 U.S.C. §§ 841(a), 841(b)(1)(C).  He moves under the Fourth and Fifth Amendments to the United States Constitution to suppress physical evidence and statements obtained by the Government as the result of his seizure and arrest on March 21, 2014.  (Doc. 19.)  The Government opposes this motion.  (Doc. 22.)  The Court held an evidentiary hearing on January 6, 2015 and heard testimony from Brandon Oxley, Dr. James Rademacher, Sergeant Eric Albright, and Trooper Lewis Hatch.  (Doc. 25.)  Following the hearing, Pabon and the Government filed supplemental briefs. (Docs. 32, 35, 36, 38.)  For the reasons stated below, the Court DENIES the Motion to Suppress.

II.  Background[1]

Around 1:00 a.m. on March 21, 2014, Trooper Richardson of the Vermont State Police ("VSP") pulled over a rental car driven by Jaiden Paige in which Pabon was a passenger.  The police

---

[1] The facts described in this section are undisputed or are found by the Court after the evidentiary hearing.

ostensibly stopped Paige for breaching a stop line at a traffic light, but the stop was also part of an ongoing drug investigation. Less than a week earlier police had pulled over a different car containing Pabon, Paige and $8,500 in cash, whom police identified as involved in drug trafficking. Thus, on March 21, the VSP were operating on information indicating Paige was a known drug dealer who brings "people and sometimes females" who body-pack narcotics from Connecticut to the Rutland, Vermont area. (Def. Ex. A, ¶ 7.)

At the March 21 stop, the VSP held the car for approximately 44 minutes before conducting a canine sniff search, which alerted on the passenger door. During this time the VSP questioned Paige and Pabon, and searched Paige's person and Paige's vehicle with his consent. Trooper Richardson also contacted Trooper Lewis Hatch who was familiar with the investigation of Paige. VSP detained Pabon and Paige, but did not read them Miranda rights.

At the Rutland barracks, police attempted to make Pabon sit on a chair so a drug sniffing dog, K9 Gunny, could sniff the seat for traces of drugs. Pabon refused. The VSP also took Pabon to the restroom, but he did not use it. Trooper Hatch obtained a search warrant from Judge William Cohen of the Rutland Superior Court authorizing an x-ray of Pabon's abdomen. Later that morning, at 7:45 a.m., police transported Pabon to Rutland Regional Medical Center ("RRMC") for an x-ray. Pabon asked for a lawyer and an officer told Pabon an attorney had called on his behalf, but that he was not allowed to speak to an attorney at that time.

While Pabon was in transit, Trooper Hatch took K9 Gunny to the cell, where he alerted for narcotics. The dog's head snapped upon initial entry, and after entering and exiting Pabon's cell several times, barked, indicating the presence of the odor of narcotics.

At RRMC, radiologic technologist Brandon Oxley took and reviewed x-rays of Pabon's abdomen. He testified he told Trooper Hatch, "I don't know if this is normal or not but I'm going

2

2:14-cr-00049-cr    Document 41    Filed 05/26/15    Page 3 of 16

to get it checked right away." (Doc. 26 (Suppression Hr'g Tr.), at 14). Subsequently the attending physician, Dr. Rademacher, found no evidence of a rectal foreign body. (Id. at 27.) Dr. Todd Gregory also reviewed the x-rays and concluded they were "negative" for drugs. (Def. Ex. J.) That afternoon, at approximately 2:45 p.m., the VSP took Pabon back to the barracks.

Unsatisfied with the conclusions of Dr. Rademacher and Dr. Gregory, Troopers Hatch and Perkins reviewed the x-rays themselves and identified knots and bags consistent with body packing. Trooper Perkins asked Sergeant Eric Albright, who has extensive experience in body-packing cases, to review the x-ray, and Sergeant Albright immediately opined the x-ray showed three masses that appeared to be "plastic bags with knots in them and contained within a white mass consistent with narcotics." (Def. Ex. G.)

Based on the reviews of the x-ray by Sergeant Albright, Oxley, and the doctors, Trooper Hatch sought a warrant to perform a CT scan on Pabon from Judge Cohen, but in the absence of additional evidence Judge Cohen declined to issue a warrant. (Suppression H'rg Tr. at 81.) Trooper Hatch then returned to the barracks with the intent of releasing Pabon. (Id.)

During Trooper Hatch's absence, however, further evidence emerged. At the barracks, the VSP denied Pabon the opportunity to call his attorney on the basis he was not under interrogation. Pabon grew upset, banged his head against the cell bars, and passed out. The VSP took him to RRMC for treatment of a possible head injury. Concerned that leaked drugs may have caused Pabon's lethargy, the treating physician, Dr. Hartman, reviewed Pabon's x-rays and determined they were equivocal for narcotics present inside Pabon's abdomen. See Def. Exh. A, ¶¶ 33-34.; Def. Exh. H, at 000083 (Hartman stated he reviewed Pabon's x-rays and found them "equivocal for foreign body in the patient's rectum"). Pabon refused to allow Dr. Hartman to perform a CT scan of his pelvis to determine if any body-packed bags were leaking.

3

Based on K9 Gunny's alert, Sergeant Albright's interpretation of the x-rays, the doctors' interpretation of the x-rays, and Dr. Hartman's review of the x-rays, Judge Cohen granted a warrant for a CT scan at approximately 9:15 p.m.

Pabon was transferred back to RRMC and a radiologist performed a CT scan, which at 10:22 p.m. Dr. Hartman concluded showed foreign objects consistent with body-packing. Some time after midnight on March 22, Pabon passed packages of narcotics induced by laxatives. The VSP determined the contents of those packages were narcotics.

III.   Alleged Fourth and Fifth Amendment Rights Violations

   A.   Motor Vehicle Stop

Pabon argues the automobile stop was unreasonable because there was no lawful basis for the stop. Although police may stop a vehicle on pretext, see Whren v. United States, 517 U.S. 806, 812 (1996), it is unreasonable for police to stop a vehicle for no reason at all. Video footage, however, shows VSP stopped Paige's car after he breached a white line at a stop light, a violation of 23 V.S.A. § 1024. (Def. Ex. D.) Accordingly, the VSP's stop of the car Pabon was riding in was reasonable.

   B.   Arrest of Pabon

      1.   Length of the Vehicle Stop

Although the VSP's stop of Pabon's automobile was not unlawful, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." Illinois v. Caballes, 543 U.S. 405, 407 (2005). Pabon argues that the automobile stop lasted an unreasonably long time.

Police may seize and detain a suspect if they have reasonable suspicion "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). "Reasonable suspicion should be based on

specific and articulable facts objectively indicating unlawful conduct." United States v. Swinger, No. 1:08-cr-24, 2009 WL 311870, at *2 (D. Vt. Feb. 6, 2009). The duration of such an investigative stop must not exceed the time needed for "police [to] diligently pursue[ ] a means of investigation . . . likely to confirm or dispel their suspicions quickly." United States v. Sharpe, 470 U.S. 675, 686 (1985). If an investigative stop exceeds the reasonable scope and duration, it becomes an arrest for which police must have probable cause. See id.

  Pabon argues the VSP arrested him without probable cause by seizing him for forty-four minutes before the canine search. He emphasizes one of the troopers present at the stop expressed concern about a "time issue" thirty-seven minutes into the stop, arguing at that point the VSP's reasonable suspicion dissipated. (Def. Ex. D.) The Government concedes Pabon was seized at the traffic stop but argues the detention was not unreasonably long because reasonable suspicion was based on other information and not just information gleaned at a cold traffic stop. The Government cites United States v. Onumonu, 967 F.2d 782 (2d Cir. 1992), in which the court upheld a four-day detention of a drug smuggler at the border until he naturally passed drugs. See id. at 790 ("Once reasonable suspicion was established, the governmental authorities could detain Onumonu until he demonstrated, through his bowel movements, that the suspicion was either confirmed or unwarranted."). The VSP's stop of Pabon was not a border stop, and thus the Government may not avail itself of the additional power available to customs officials in Onumonu. See United States v. Montoya de Hernandez, 473 U.S. 531, 544 (1985) ("[A]t the international border . . . the Fourth Amendment balance of interests leans heavily to the Government.").

  Nonetheless, the Court finds the stop was not unreasonably long. The VSP took approximately forty-four minutes to diligently pursue their investigation. A forty-four minute detention is not, on its own, unreasonable. See United States v. Tehrani, 49 F.3d 54, 61 (2d Cir.

1995) ("The agent made speedy and appropriate inquiries in a reasonable way. We decline to hold that a thirty minute detention based on reasonable suspicion is, per se, too long."); United States v. Mayo, 394 F.3d 1271, 1276 (9th Cir. 2005) (forty-minute traffic stop was not unreasonably long when "officers pursued their multiple inquiries promptly as they arose"); United States v. Davies, 768 F.2d 893, 902 (7th Cir.) (forty-five minute detention not unreasonable), cert. denied 474 U.S. 1008 (1985).  Rather, the issue is whether the police "made speedy and appropriate inquiries in a reasonable way." Tehrani, 49 F.3d at 61.

In the case at hand, the VSP stopped the vehicle in which Pabon was traveling, questioned the passengers, searched the vehicle with the consent of the driver, and ultimately deployed a drug-sniffing dog to sniff the vehicle.  The VSP's approach was thorough and time-consuming, but this was in part because they were operating on intelligence gleaned by Trooper Hatch before the stop was made. See United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001) ("Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.").  The officers suspected the driver, Paige, was making frequent trips from Hartford, Connecticut to Vermont in rental vehicles transporting drugs.  They had stopped Paige and Pabon with $8,500 in cash in the vehicle the previous week.  At the scene, they also knew Paige had lied about his point of origin.  Although Trooper Richardson expressed concern about the length of the stop, this alone is insufficient to dispel reasonable suspicion, particularly where the police spent the majority of the intervening time questioning Paige and Pabon, searching Paige's person, and searching Paige's vehicle.

Accordingly, the Court finds the VSP's stop of Paige's car was reasonable in scope and duration, based on suspicion Paige and Pabon were transporting drugs.[2] It was not unreasonable to question Paige and Pabon, search the vehicle, and ultimately deploy a drug-sniffing dog within a forty-four minute period.

2.  Probable Cause To Arrest Pabon

Pabon alternatively argues the VSP lacked probable cause to handcuff Pabon and transport him to the barracks even after the canine search produced an alert on the passenger-side door of Paige's car. Pabon argues he was placed under arrest when he was handcuffed. "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983).

First, Pabon argues the VSP had no probable cause to arrest him because all the facts supporting probable cause related to Paige. Specifically, the VSP had reason to believe Paige trafficked drugs and sometimes had females body-pack them but the only known facts about Pabon were that he was riding with Paige and a canine alerted to the passenger door. That evidence, however, was sufficient to indicate "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The VSP had information suggesting Paige's passenger was carrying drugs inside his body. A search of the vehicle did not

---

[2] Pabon also argues the stop was unreasonable because it exceeded the time needed to ticket Paige for violating 23 V.S.A. § 1024. See Rodriguez v. United States, 135 S. Ct. 1609 (2015) (finding a traffic stop unreasonably long when police had no reason to suspect the defendant possessed drugs but held him for a dog sniff after issuing a ticket). Rodriguez is inapposite. Whereas the police in Rodriguez had no suspicion of criminal activity other than a traffic violation, see id. at 1616-17, as discussed above the VSP had reasonable suspicion Paige and Pabon were engaged in drug trafficking.

result in the presence of drugs, but a canine alert on the passenger door nonetheless indicated the presence of drugs.  The VSP had probable cause to arrest Pabon at that point.

Second, Pabon argues that even if the VSP initially had probable cause, it dissipated when the police failed to find incriminating evidence on him, when K-9 Gunny failed to alert to a chair in which Pabon had been seated, and after Dr. Rademacher and Dr. Gregory found no evidence of a foreign body in the x-ray of Pabon's pelvis.  See United States v. Bazinet, 462 F.2d 982, 988 (11th Cir. 1972) (probable cause dissipated after police searched an arrestee's van and found no additional evidence of criminal activity).  The Government argues Sergeant Albright's review of the x-ray in fact strengthened probable cause, and in the alternative, the VSP reasonably relied on Judge Cohen's finding of probable cause for each search performed.  See United States v. Leon, 468 U.S. 897, 907-08 (1984) (providing a "good faith" exception to the exclusionary rule).  It may be the case that probable cause was diminished after Dr. Rademacher and Dr. Gregory reviewed the x-rays, but the appropriate inquiry is whether the VSP acted reasonably during the period between Pabon's discharge and his readmission to the hospital.  The VSP were permitted to hold Pabon for a reasonable period of time while seeking a warrant for a CT scan.  See Seifert v. Rivera, 933 F. Supp. 2d 307, 322 (D. Conn. 2013) ("[E]ven in the absence of a warrant, a temporary seizure supported by probable cause and exigent circumstances to prevent the destruction of evidence while the police diligently obtain a warrant is reasonable under the Fourth Amendment.") (emphasis added); see also Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 56-57 (1991) ("Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another . . . and other practical realities.").  The VSP had evidence Pabon was committing a crime based on the available

facts and bolstered by Sergeant Albright's review of the x-rays.[3]  Accordingly, probable cause was not dispelled after Dr. Rademacher determined there was no evidence of narcotics in Pabon's abdomen.[4]

### 3.   Absence of Probable Cause Hearing

Pabon argues the VSP violated his Fourth Amendment rights by failing to provide a prompt probable cause hearing.  A probable cause hearing must not be unreasonably delayed, and generally must be held within forty-eight hours of arrest.  See McLaughlin, 500 U.S. at 56.  Pabon argues the VSP did not take him for a probable cause hearing until more than seventy-two hours after his arrest -- though this description of the facts ignores Judge Cohen's issuance of two search warrants within twenty hours of his arrest.  The Government admits the VSP continued to hold Pabon while they sought an additional warrant for a CT scan following the equivocal x-rays, but contends this was reasonable.  Pabon disagrees.

First, Pabon contends a judicial finding of probable cause underpinning a search warrant is insufficient to satisfy McLaughlin.  The Supreme Court has been quite clear, however, that a probable cause hearing justifying detention attendant to an arrest need be neither adversarial nor formal and may in fact "be made by a judicial officer either before or promptly after the arrest."

---

[3] The canine alert occurred on Pabon's door, Paige was known to transport passengers who concealed narcotics in their bodies, and Sergeant Albright's review of the x-ray suggested Pabon had narcotics in him.  This case differs from Bazinet, in which the only evidence implicating the appellant in criminal conduct was his presence in the vehicle of a person suspected of planning a bank robbery.  See 462 F.2d at 988.  There, the court found probable cause dissipated once a search of the van provided "no information regarding [defendant]'s present involvement in any crime."  Id. at 989.  In the present case, however, Sergeant Albright's review of the x-ray suggested Pabon, specifically, was involved in a crime.

[4] It is not readily clear Leon's good faith exception would apply after the x-ray warrant had been executed, as the VSP were not holding Pabon pursuant to any warrant at that point.  The VSP's reasonable suspicion Pabon was committing a crime, however, was not dispelled.

9

Gerstein v. Pugh, 420 U.S. 103, 125 (1975); see also United States v. Onyema, 766 F. Supp. 76, 82 (E.D.N.Y. 1991) (explaining McLaughlin's probable cause hearing requirement can be "satisfied by a 'nonadversary' or 'informal' proceeding based upon 'hearsay and written testimony'").

Second, Pabon argues unreasonable delay occurred during the period following the doctors' review of the x-rays, when Sergeant Albright was contacted for an additional opinion and before the request for a second search warrant. McLaughlin defined unreasonable delay to include "delays for the purpose of gathering additional evidence to justify the arrest." 500 U.S. at 56. In this case, however, the x-rays were taken pursuant to judicial authorization. It was not unreasonable to obtain an additional opinion or seek a warrant for a CT scan given the x-rays were inconclusive. The evil McLaughlin seeks to remedy is prolonged detention with no finding of probable cause. See 500 U.S. at 55 ("A State has no legitimate interest in detaining for extended periods individuals who have been arrested without probable cause."). Judge Cohen found probable cause to conduct the x-ray and eventually the CT scan. Pabon was held at the barracks during the time the warrants were sought and obtained.

Third, Pabon contends the VSP should have released him immediately following Dr. Rademacher's reading of the x-rays. Trooper Hatch and others believed Dr. Rademacher was mistaken. While Trooper Hatch sought an additional warrant to perform a more invasive and conclusive CT scan, Pabon's behavior resulted in his subsequent hospitalization and additional review of his x-rays by Dr. Hartman. McLaughlin acknowledges the administrative difficulties police officers face in holding and processing arrestees. 500 U.S. at 55, 56-57 ("Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest,

and other practical realities."). The VSP did not act unreasonably in seeking judicial authorization for a more accurate procedure, because Dr. Rademacher indicated the x-rays were not one hundred percent sensitive to foreign matter and Sergeant Albright offered a conflicting opinion.

The parties also disagree about the appropriate remedy for a McLaughlin violation. Pabon argues a violation of McLaughlin should result in suppression. Anderson v. Calderon, 232 F.3d 1053, 1072 (9th Cir. 2000) ("[T]he appropriate remedy for a McLaughlin violation is the exclusion of the evidence in question -- if it was 'fruit of the poisonous tree.'") (emphasis in original). But it is not clear suppression is the appropriate remedy for a McLaughlin violation. See United States v. Terrell, 483 F. App'x 161, 165 (6th Cir. 2012) (appropriate remedy for McLaughlin violation is a Bivens action, not suppression). The Supreme Court has not resolved this issue. See United States v. Chavez, 705 F.3d 381, 386 (8th Cir. 2013). Regardless, the Court need not reach this issue, as it finds the VSP did not violate McLaughlin.

    4.  Monitored Bowel Movement Search

Judge Cohen granted the government's request for a warrant to search Pabon by CT scan at 9:15 p.m. on March 21. After a CT scan showed foreign bodies in Pabon, he ingested oral laxatives and passed packages containing drugs. Pabon claims the VSP did not have a warrant to search these packages, only to scan his body, and argues the contents of his bowel movement should be excluded from evidence. The VSP, however, obtained broader warrants following the initial CT scan, which provided them authority to seize any "[d]rugs, drug residue, drug paraphernalia and drug proceeds" and "prepare a written inventory of it." (Gov. Ex. D, at 000494.) Accordingly, the search of the packages contained in Pabon's body did not raise Fourth Amendment concerns.

5.      Validity of the CT Scan Warrant

Pabon argues Trooper Hatch knowingly and intentionally made false and exaggerated statements in his affidavit in support of the 9:15 p.m. search warrant for a CT scan.  Specifically, he asserts Trooper Hatch's affidavit indicated K9 Gunny entered Pabon's holding cell and immediately alerted for drugs, when in fact video evidence suggests the alert came only after the dog entered the cell a fourth time.  Pabon also argues Trooper Hatch's statement in his affidavit that doctors "were not certain if there was an anomaly or fecal matter" (Def. Ex. A ¶ 31) was false because a radiologic technologist and two doctors reviewing the x-ray found no foreign body.  Pabon argues those statements were necessary to Judge Cohen's finding of probable cause, and therefore the warrant was invalid.  See Franks v. Delaware, 438 U.S. 154, 165 (1978) ("Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment.") (internal citation omitted).  The Government argues none of the alleged exaggerations or misstatements was necessary to Judge Cohen's finding of probable cause.

First, Pabon contends Trooper Hatch's affidavit falsely included a statement by radiological technologist Oxley that Pabon's x-rays were "not normal" when in fact he said "I don't know if this is normal or not, but I'm going to get it checked right away."  (Suppression Hr'g Tr. at 14.) Although Trooper Hatch misquoted Oxley, his characterization of Oxley's statement was not misleading.  Oxley did express he saw "an abnormality" in the x-ray, and he immediately elevated the x-rays to Dr. Rademacher for review "because of what I believed was on the monitor."  (Id. at 14-15.)  Accordingly, Trooper Hatch's misquotation of Oxley was not the type of discrepancy that

would mislead a judge.  Furthermore, there is no indication Trooper Hatch was reckless in misquoting Oxley.

Second, Pabon argues Trooper Hatch's affidavit misleadingly suggests Dr. Rademacher's reading of the x-ray was equivocal about whether foreign bodies were present.  At the suppression hearing, Dr. Rademacher explained he had told Trooper Hatch he observed what were "most likely . . . very hard stool balls," not drugs.  (Id. at 27.)  In his affidavit Trooper Hatch acknowledges "hospital staff" related "I do not see evidence for a rectal foreign body."  (Def. Ex. A, ¶ 31.)  Trooper Hatch also stated in the affidavit Dr. Rademacher was not one hundred percent certain a foreign body was not present (Id.), when in fact Dr. Rademacher had stated the x-ray was "not 100 percent sensitive" and it was "possible that there could be some type of rectal-packing that may not show up."  (Suppression H'rg Tr. at 29.)  Trooper Hatch does not mention Dr. Gregory's opinion, which stated "x-rays are negative."  (Def. Ex. J.)  Dr. Gregory also wrote, "there is a chance that the patient could have . . . material that we have missed" but he thought this was "unlikely."  (Id.)  In reviewing Trooper Hatch's affidavit in its entirety, the Court finds it was not misleading.  It disclosed doctors found no evidence of a foreign rectal body, and asserted the doctors could not be one hundred percent certain drugs were not present.  Although Trooper Hatch's affidavit contained quotes which were not entirely accurate, it did not include "deliberate falsehood" and was not written with "reckless disregard for the truth."[5]

---

[5] In addition, any confusion Trooper Hatch's affidavit may have caused on this point had no bearing on Pabon's fate.  As Trooper Hatch testified, Judge Cohen found this evidence alone insufficient to support a second warrant.  (Suppression H'rg Tr. at 81.)  Only after Pabon was readmitted to RRMC due to his head injury did a doctor review the x-rays and observe foreign objects, and only after incorporation of this evidence did Judge Cohen issue a warrant for a CT scan.

Third, Pabon contends Trooper Hatch's affidavit was misleading because it omitted any discussions between himself and Sergeant Albright about the x-ray results. It is unclear how this omission may have impacted Judge Cohen's perception of the relevant events.

Fourth, Pabon claims Trooper Hatch's affidavit misleadingly suggests K9 Gunny's head immediately snapped upon entering Pabon's cell, when in fact K9 Gunny did not alert until entering the cell for the third or fourth time. As Trooper Hatch testified, however, K9 Gunny did in fact snap his head upon entering the cell -- he only barked later after reentering the cell. (Suppression Hr'g Tr. at 100.) Pabon also contends Hatch's testimony reveals his affidavit omitted the fact that K9 Gunny had not been trained to detect the odor of a drug inside a person and had never performed a body-packing search prior to entering Pabon's cell. (Id. at 93.) As the Government points out, however, K9 Gunny did not sniff Pabon's body, but rather his cell, where the odors of narcotics were present.

      6.  <u>Alleged Outrageous Conduct in Violation of Substantive Due Process</u>

Pabon also argues he was subjected to outrageous government conduct in violation of his substantive due process rights under the Fifth and Fourteenth Amendments. <u>United States v. Anderson</u>, 772 F.3d 969, 974 (2d Cir. 2014) ("A defendant can raise a substantive due process claim if outrageous government conduct was directed at him."). Pabon argues the VSP used oppressive and coercive tactics on him -- he was never formally arrested and his repeated invocations of his constitutional rights were ignored.

In order for this conduct to have violated Pabon's substantive due process rights, it must shock the conscience. See <u>Rochin v. California</u>, 342 U.S. 165, 166 (1952) (finding a substantive due process violation when government agents "jumped upon" defendant in and attempted to forcibly remove drugs from his mouth, and then pumped his stomach without his consent at a hospital).

The VSP's treatment of Pabon lacks the coercion present in a typical substantive due process claim. The VSP did not apply force to Pabon beyond placing him in handcuffs or a cell, nor did they lie to him about non-existent warrants. See United States v. Anderson, No. 5:13-cr-24, 2013 WL 5769976, at *9 (D. Vt. Oct. 24, 2013), rev'd on other grounds, 772 F.3d 969 (2d Cir. 2014). Further, they did not interrogate him, but only detained him for approximately twenty hours and employed non-intrusive means to search his alimentary canal after securing warrants.

       7.       Alleged Coercive Interrogation in Violation of the Fifth Amendment

Pabon seeks suppression of all statements made from the point he was taken from the roadside stop through the end of his custody. He argues any statements should be suppressed as "fruit of the poisonous tree" based on his unlawful detention and arrest. He also claims he was never given a Miranda warning, and therefore all his statements are inadmissible. The Government responds only by contending, in a footnote, that Pabon was never interrogated and consequently Miranda v. Arizona, 384 U.S. 436 (1966), does not apply. (Doc. 22 at 10, n.1.)

It may well be the case that the VSP's failure to give Pabon a Miranda warning would result in the exclusion of his statements made following his detention. See Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect"). But as Pabon acknowledges, it is not clear what incriminating statements Pabon made and the Government has not asserted it intends to admit any of Pabon's statements. (Doc. 19, at 36.) A motion to suppress a defendant's statements becomes moot when the government determines not to offer those statements as evidence. See, e.g., United States v. Duran-Colon, 252 F. App'x 420, 422 (2d Cir. 2007). Accordingly, to the extent Pabon

seeks to exclude statements made following his detention, the Motion to Suppress is denied as moot and without prejudice.

IV.     Conclusion

Based on the foregoing, the Motion to Suppress is DENIED. This case will be placed on the July 14, 2015 jury draw calendar

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 26th day of May, 2015.

/s/ J. Garvan Murtha_____
Honorable J. Garvan Murtha
United States District Judge